UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| S.M., | ) | |
| | ) | |
| K.W., | ) | |
| | ) | |
| C.A., | ) | |
|    f/k/a,    C.H. | ) | |
| | ) | |
|       Plaintiffs, | ) | |
| | ) | No.: |
| v. | ) | |
| | ) | |
| LINCOLN COUNTY, MISSOURI, | ) | |
| | ) | |
| LT. SCOTT EDWARDS, | ) | |
| | ) | |
| COORDINATOR HEATHER | ) | |
|    GRAHAM-THOMPSON, | ) | |
| | ) | |
| SHERIFF MICHAEL KRIGBAUM | ) | |
| | ) | |
|       Defendants. | ) | |

**COMPLAINT  -  CIVIL RIGHTS – 42 U.S.C. 1983:**

Come now S.M., K.W. and C.A. f/k/a C.H., by counsel W. Bevis Schock, and state for

their Complaint

**INTRODUCTION, NOT PART OF COMPLAINT**

Plaintiffs were participants in Lincoln County Drug Court.  Lincoln County employed

Heather Thompson, without supervising her, to run the program.  Sheriff Michael Krigbaum

employed Scott Edwards.  He "tracked" participants.  Edwards sexually abused Plaintiffs S.M.

and K.W..  Thompson and Krigbaum failed to train and/or supervise Edwards.  Edwards was

able to engage in these actions even though Plaintiff C.A. had complained of his conduct in

advance.  For her complaints about Edwards C.A. was terminated from Drug Court.

## PRELIMINARY ALLEGATIONS

### Parties

1.      Plaintiff S.M. is an individual who at the time of this filing is residing in Texas.

2.      Plaintiff K.W. is an individual who at the time of this filing is incarcerated at the Women's Diagnostic Center in Vandalia, Missouri.

3.      Plaintiff C.A., f/k/a C.H., ("C.A."), is an individual who at the time of this filing is residing in Montgomery County, Missouri.

4.      At all relevant times Defendant Lt. Scott Edwards was the Lincoln County Drug Court "Tracker" with the 45th Judicial Circuit Drug Court, ("Drug Court"), and a Lieutenant in the Lincoln County Sheriff's Department.

5.      Plaintiffs sue Edwards in his individual capacity only.

6.      The 45th Judicial Circuit includes Lincoln County.

7.      Defendant Lincoln County is a properly formed County in the State of Missouri.

8.      At all relevant times Defendant Coordinator Heather Graham-Thompson was the Drug Court "Coordinator/Administrator", and acted pursuant to a contract with Lincoln County.

9.      Plaintiffs sue Thompson in her individual capacity.

10.     Sheriff Michael Krigbaum is and at all relevant times has been the duly elected Sheriff of Lincoln County.

11.     Plaintiffs sue Krigbaum in his individual capacity.

### Jurisdiction

12.     Plaintiff brings this action pursuant to 42 U.S.C. §1983 and §1988 and the Fourteenth Amendment to the United States Constitution.

13.     The court has jurisdiction pursuant to 28 U.S.C. §1343 and 28 U.S.C. §1331.

### Venue

14.     The events complained of occurred in the Eastern District of Missouri, in the Eastern

        Division.

### Color of State Law

15.     At all relevant times all Defendants were acting under color of state law.  Particularly, at

        all relevant times each Defendant acted under color of the laws, statutes, ordinances,

        regulations, policies, customs and usages of the State of Missouri, and its political

        subdivisions.

### Jury Demand

16.     Plaintiffs demand jury trial.

### FACTS

### Operation and Structure of Drug Court

17.     Lincoln County and Pike County make up the 45th Judicial Circuit of the State of

        Missouri.

18.     At all relevant times Lincoln County and Pike County operated the 45th Judicial Circuit

        Drug Court.

19.     Drug Court is a post-plea treatment program for non-violent drug offenders.  Participants

        receive treatment instead of incarceration in the hope that they will stay out of prison,

        solve their drug habits, and become productive members of society.

20.     The purpose of Drug Court is to help the participants.

21.     Between August 11, 2010 and November 30, 2010, ("the time period"), Plaintiffs S.M.

        and K.W. were participants in the 45th Judicial Circuit Drug Court.

22.     On or about January 1, 2010 Lincoln County entered into an agreement with Coordinator Thompson pursuant to which she managed Drug Court.

23.     Under the terms of that contract:

> County will not and cannot direct the manner in which Thompson handles the position as it is appropriate for an independent contractor.

24.     Formally Thompson reported to the Lincoln County Circuit Clerk who, on information and belief had neither particular knowledge of Drug Court nor any formal policy making responsibilities related to Drug Court.

25.     Pursuant to the Drug Court policies in effect at the relevant time:

    a.     Persons working in Drug Court were to collaborate and to operate as a team, Drug Court's Policies and Procedures Manual, ("the Drug Court Manual), p. 3, and Memorandum of Understanding, August 10, 2006.

    b.     One of the members of the Drug Court team had the role of Tracker, Drug Court Manual, p. 8.

    c.     The Tracker was the person from Drug Court who would interact with the participants on a day to day basis. The formal job description for the tracker in the Participant Manual reads:

> A representative from the Lincoln County Sheriff's Department, acting as a Drug Court Tracker, may, at any time, conduct home, employment or any other visits as deemed necessary or appropriate by the tracker and/or the drug court team. All participants will be responsible to allow access to their residence, including a search of the residence for anything that would be considered a violation of program rules. Participants may also be

tested for drug and alcohol use during these visits. Failure to comply may result in sanctions from the Drug Court. P. 9.

d. The "Tracker" was the person responsible for contact with the Judge. The Drug Court Manual's description of the role of the Tracker generally tracks the language of the description in the Participant Manual, but adds:

> If the tracker finds that the participant has violated drug court policy, he will contact the judge to determine if the participant should be taken into custody as a sanction, p. 8.

26. Pursuant to custom and practice, the Tracker had complete control over the participants' lives because upon his recommendation the judge would put a participant in jail, and/or seize the participant and/or create legal jeopardy against the participant.

27. Pursuant to the Drug Court Manual the Drug Court team could terminate from the program any participant for "any other reason(s) as determined by the Drug Court team", p. 17.

28. At all relevant times:

a. Defendant Lt. Edwards was the Drug Court Tracker, and

b. On information and belief,

i. Lt. Edwards was an employee of Sheriff Krigbaum and formally subject to his formal supervision,

ii. Sheriff Krigbaum did not supervise Lt. Edwards in any meaningful way.

iii. Pursuant to custom and practice Defendant Coordinator Thompson was Lt. Edwards' day to day supervisor, and controlled his actions.

29. On several occasions Lt. Edwards told K.W. that he could "put you in prison."

30. Participants in Drug Court signed waivers so that confidential information about their situations could be shared among Drug Court team members.

### Coordinator Thompson as Policy Maker – Liability of Lincoln County

31. Pursuant to the Drug Court Manual, Coordinator Thompson was responsible for "making necessary revisions to the [Drug Court's] official policy and procedures manual", p. 6.

32. Coordinator Thompson, according to the Drug Court Manual, was in charge of the day to day operations of the Drug Court, p. 6.

33. Pursuant to the Drug Court Manual Coordinator Thompson was responsible for the "on-going" evaluation of the program," p. 6.

34. Coordinator Thompson had no significant oversight from any member of the Lincoln County government.

35. Coordinator Thompson was a policy maker.

36. Because Coordinator Thompson, as a policy maker, was engaged in actions which caused the deprivation of Plaintiff's rights, then as a matter of law Lincoln County is liable for the unconstitutional acts alleged herein.[1] [2]

37. Because Sheriff Krigbaum failed to supervise Lt. Edwards, Lincoln County is liable for Lt. Edwards actions.

### S.M.

---

[1] *Pembaur v. City of Cincinnati*, **475 U.S. 469, 481 (1986)**, "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983".

[2] Plaintiffs do not sue Coordinator Thompson in her official capacity because to do so would be redundant, and such claim would be subject to dismissal, *Kentucky v. Graham*, **473 U.S. 159, 166 (1985)**, and see *C.B v. Burgess*, **Western District of Missouri, 11-CV-870.**

38.	During the time period Lt. Edwards required S.M. to move from a stable situation where she lived at her mother's residence into a motel in Troy.

39.	Drug Court paid for most nights at the motel.

40.	Lt. Edwards paid for the first night at the motel.

41.	Lt. Edwards sexually assaulted S.M. several times, including:

　　a.	Fondling her bare breasts,

　　b.	Sucking on her bare breasts,

　　c.	Touching her genitals with his hands, including digital penetration,

　　d.	Holding her down on the bed while he was clothed and rubbing his erect penis against her body,

　　e.	Touching his mouth to her genitals,

42.	On one occasion S.M. tried to push Lt. Edwards's mouth away from her genitals and he bit her genitals with his teeth in order to prevent her from pushing him away, and the bite drew blood and left an injury which took several days to heal.

43.	Due to duress and the related balance of power in Lt. Edwards' favor, S.M. had no lawful capacity to consent to Lt. Edwards' sexual assaults.[3]

**K.W.**

44.	During the time period Lt. Edwards sexually assaulted K.W. by fondling her breasts.

45.	The details of the assault are:

　　a.	Lt. Edwards was taking K.W. to jail in his car because she had failed a urinalysis test.

---

[3] MAI–CR3d 320.07

b.      Lt. Edwards told K.W. that it would be "his ass", if she were caught with drugs entering the jail.

c.      Lt. Edwards asked K.W. if she had any drugs.

d.      K.W. denied having any drugs.

e.      Lt. Edwards asked K.W. if she had any drugs in her bra.

f.      K.W. denied having drugs in her bra.

g.      Lt. Edwards demanded she remove her bra.

h.      K.W. took off her bra (without removing her shirt), and handed it to Lt. Edwards.

i.      Lt. Edwards demanded to know if K.W. had any drugs taped to her skin.

j.      K.W. denied having any drugs taped to her skin.

k.      Lt. Edwards said he had to check.

l.      Lt. Edwards proceeded to put his hands up K.W.'s shirt and onto K.W.'s breasts.

m.      Lt. Edwards kept his hands on K.W.'s breasts for an extended period of time – approximately one and a half minutes.

n.      Lt. Edwards fondled K.W.'s breasts throughout the approximately one and a half minutes.

o.      K.W. remained silent during the sexual assault because she felt she had no choice but to cooperate without resistance.

p.      Lt. Edwards then told K.W. to put her bra back on.

q.      K.W. put her bra back on by first removing her shirt and thereby becoming nude from the waist up, and then putting on her bra and shirt.

r.      K.W. attempted to turn to the passenger side door of the car, but her breasts were still visible to Lt. Edwards during the time she was getting dressed.

s.     Lt. Edwards then took K.W. to jail.

46.     The ostensible reason for the physical contact between Mr. Edwards' hand and K.W.'s breasts was to conduct a search, but the length of time of Lt. Edwards' contact with K.W.'s breasts vastly exceeded the time required for a search.

47.     The contact was in fact undertaken for Lt. Edwards' sexual gratification.[4]

48.     Pursuant to Missouri's strip search law, RSMo. 544.193-197 if the contact was for the purpose of a lawful search then it would have to have been conducted by a female officer.

49.     Before the incident just described Lt. Edwards made many inappropriate comments to K.W. about her sexuality, including asking her to:

a.     Give him pictures of her naked body, and

b.     Allow him to watch her having sex.

50.     Those comments created a context for the incident which increased K.W.'s fear during the act of fondling her breasts.

51.     Due to duress and the balance of power in Lt. Edwards' favor, K.W. had no lawful capacity to consent to Lt. Edwards' sexual assault.

### C.A.

52.     Approximately three months before the start of the time period, during a counseling session, C.A. told Kristi Butler, then a Probation and Parole Officer of Drug Court and a member of the Drug Court Team, that Lt. Edwards was:

a.     Making inappropriate comments about sex to her, including references to her body and her sexuality, the bodies and sexuality of other young, attractive female participants in Drug Court, and his own body and his own sexuality,

---

[4] *State v. Lewis*, **SD31553, November 2012**.

b.    Making house visits to young, attractive female participants in Drug Court at unusual times of day, particularly in the morning when curfew would not be an issue, but was not making similar house visits to other participants in Drug Court,

c.    Not making similar house visits to other Drug Court participants,

d.    Talking about his sexual relationship with his Wife,

e.    Remaining at C.A.'s house and the houses of other young, attractive, female participants in Drug Court for much longer periods of time than was necessary to conduct Drug Court business,

f.    Making disparaging remarks about the boyfriends of the young, attractive female participants in Drug Court (some of whom were the fathers of the children of those young, attractive female participants in Drug Court),

g.    Bringing pizza to her house, and

h.    Fixing her traffic tickets.

53.    C.A. believed that the conduct by Lt. Edwards toward her was actually all a maneuver to get her to engage in a sexual relationship with him,

54.    C.A. told Butler that she did not want Lt. Edwards at her house anymore and that he was a "pervert" and a "creep".

55.    C.A. told Butler she had been afraid to talk previously because she feared that she would be terminated from Drug Court for trying to manipulate the system.

56.    Butler told C.A. she would take the information to her supervisor.

57.    Before C.A. spoke to Butler as indicated above C.A. and other participants stated to Ron Rice during "process group" that Lt. Edwards' was showing up at young attractive female

participants' houses inappropriately, and engaging in other improper comments and conduct regarding sex.

58.  Pursuant to the Drug Court Manual Ron Rice's duties included delivering "any other relevant information" to the case manager, and "advis[ing] the Drug Court Team of the individual accomplishments, failures and general well being of the participant between regularly scheduled court appearances," p. 7.

59.  A few days or weeks after C.A. made these complaints about Lt. Edwards she was terminated from 45th Judicial Circuit Drug Court.

60.  On information and belief Lt. Edwards and Ron Rice were very close friends within their work place.

61.  As a result of C.A.'s termination from Drug Court she went to prison.

62.  Drug Court officials wrote in the their paperwork that the reason for C.A.'s termination from Drug Court was:

> [l]ack of therapeutic gain, negative associations, forging self help meetings CLT lack of attending schooling, lying to the team regarding her scheduled mental health appts. The alleged allegations on her k-2 and attempt to persuade and threaten peers with her k-2 usage.

63.  C.A. acknowledges she engaged in the following acts of misconduct at the time:

a.  Smoking "fake pot",

b.  Having someone else sign in for her at a counseling session when she was not there,

c.  Being expelled from school, and

d.  Being romantically involved with another participant in Drug Court.

64.     At the same time C.A. was terminated from Drug Court Sean Stavron, C.A.'s boyfriend and a fellow drug court participant, engaged in three of the four items of improper conduct above, only excluding the expulsion from school.

65.     Stavron terminated himself from Drug Court, but the Drug Court officials encouraged him to stay in Drug Court.

66.     While in Drug Court C.A. went to Vocational Rehab, and was otherwise a cooperative participant in Drug Court.

67.     Although C.A.'s conduct record during drug court was not perfect:

        a.      Several of the allegations were unsubstantiated rumors,

        b.      Her conduct was on a par with others who were no terminated, and

        c.      Some or all of the stated reasons were pretextual.

68.     The real reason for C.A.'s termination from Drug Court was because she complained about Lt. Edwards.

**Vulnerability of all Plaintiffs**

69.     At all relevant times each Plaintiff was psychologically vulnerable to Lt. Edwards due to:

        a.      Her problems with addiction,

        b.      Her position as a participant in drug court, and

        c.      Lt. Edwards' power to have her incarcerated.

**Another Informant**

70.     At least one other person, informed members of the Drug Court Team, before the relevant time period, of Lt. Edwards' improper comments and conduct regarding sex.

**Edwards' Plea of Guilty**

71.     On July 10, 2012 in 4:11CR00463AGF, Edwards pled guilty to violating the constitutional rights of Plaintiffs S.M. and K.W. (and others) by violating their rights to substantive due process and bodily integrity, all under color of state law. The plea was pursuant to a ten year plea agreement and at the time of this filing is subject to court approval. Sentencing is set for December 14, 2012.

### DAMAGES

72.     All Plaintiffs suffered and continue to suffer:

   a.     Humiliation,

   b.     Indignity,

   c.     Disgrace,

   d.     Stress,

   e.     Fear,

   f.     Mental suffering,

   g.     Anxiety over sex, and

   h.     Fear of police.

73.     Other than C.A., who spoke to one counselor, none of the Plaintiffs has received counseling over her victimization by Lt. Edwards.

74.     Each Plaintiff suffered a loss of opportunity to continue in Drug Court and to thereby attempt to resolve her addiction problems, and reenter society, all pursuant to the objectives of Drug Court.

75.     As a result of her termination from Drug Court C.A. suffered becoming a convicted felon.

76.     S.M. suffered pain from her bodily injury.

**CAUSATION**

77.     The actions of Defendants and each of them proximately caused all the damages

Plaintiffs suffered.

**ATTORNEY'S FEES AND COSTS**

78.     In pursuit of these claims each Plaintiff is incurring reasonable attorney's fees, taxable

costs, and non-taxable costs.

_____

**COUNT I**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. §1983**
**FOURTEENTH AMENDMENT - SUBSTANTIVE DUE PROCESS**
**S.M. AND K.W. AGAINST LT. EDWARDS**

79.     Plaintiffs S.M. and K.W. incorporate all prior paragraphs.

80.     The sexual misconduct of Lt. Edwards against S.M. and K.W. was so egregious and so

outrageous that it may fairly be said to shock the contemporary conscience.[5]

81.     Lt. Edwards violated S.M. and K.W.'s rights to substantive due process.

82.     As a direct result of the actions of Lt. Edwards, S.M. and K.W. suffered the damages

outlined above.

WHEREFORE, Plaintiffs Mayer and K.W. pray the court for judgment for their

respective compensatory damages against Lt. Edwards in his individual capacity, costs, attorney's

fees and such other relief as the court finds to be just, meet and reasonable.

**COUNT II**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. §1983**
**FAILURE TO SUPERVISE – INADEQUATE POLICIES**
**S.M. AND K.W.**
**AGAINST COORDINATOR THOMPSON AND SHERIFF KRIGBAUM**

---

[5] *Cavataio v. City of Bella Villa*, **570 F.3d 1015, 1022 (8th Cir. 2009),** *Rogers v. City of Little Rock,* **152 F.3d 790 (8th Cir.1998),** *Haberthur v. City of Raymore,* **119 F.3d 720 (8th Cir.1997).**

83.     Plaintiffs incorporate all prior paragraphs.

84.     In the alternative Coordinator Thompson was aware or constructively aware[6] from incidents and informants that Lt. Edwards had a propensity to commit sexual misconduct against women who were under his supervision.

85.     Coordinator Thompson was aware or should have been aware that Lt. Edwards was having Plaintiffs S.M. and K.W. reside in a motel, where each would be vulnerable to Lt. Edwards's attacks.

86.     In the alternative Coordinator Thompson acquiesced in the harm.

87.     In the alternative, Coordinator Thompson, by policy, failed to maintain a feedback system so that upon complaints about Lt. Edwards to other members of the team she would know about it.

88.     In the alternative, the risk of the harm was obvious.[7]

89.     In the alternative, Coordinator Thompson designed the policies, or failed to amend the policies, so that there would be supervision and a disciplinary system over Lt. Edwards, including but not limited to an Internal Affairs function. [8]

90.     In the alternative, Coordinator Thompson failed to take remedial steps to protect S.M. and K.W. from the harms they incurred from Lt. Edwards despite her knowledge of a substantial risk of serious harm.[9]

---

[6] *Shaw v. Stroud*, **113 F.3d 791 (4th Cir. 1991)**.
[7] *Farmer v. Brennan*, **511 U.S. 825, 842 (1994)**, a deliberate indifference case but in the prison, Eighth Amendment context
[8] *Harris v. Pagedale*, **821 F.2d 499 (8th Cir. 1987)**.
[9] *Wilson v. City of North Little Rock*, **801 F.2d 316, 322 (8th Cir.1986);** *Andrews v. Fowler,* **98 F.3d 1069, 1075 (8th Cir.1996),** *Vaughn v. Green County, AK,* **438 F.3d 845, 851 (8th Cir. 2006).**

91.     In the alternative, Coordinator Thompson failed to supervise Lt. Edwards to the extent that there was no accountability as to the whereabouts, assignments and conduct of Lt. Edwards.

92.     In the alternative, Coordinator Thompson failed to adequately train Lt. Edwards.

93.     In the alternative, Coordinator Thompson allowed conditions which would be ripe for sexual misconduct by Lt. Edwards.

94.     Coordinator Thompson was deliberately indifferent to the risk that Lt. Edwards would engage in sexual misconduct against S.M. and K.W..

95.     On information and belief Sheriff Krigbaum exercised no meaningful supervision whatsoever over the conduct of Lt. Edwards in his role as tracker for Drug Court, and also provided him no training for that position.

96.     The sexual misconduct of Lt. Edwards against S.M. and K.W. was an inevitable result of the lack of close and continuing supervision of Lt. Edwards.

97.     There is an affirmative causal link between Coordinator Thompson and Sheriff Krigbaum's inaction and the particular constitutional injuries suffered by Plaintiffs.

98.     As a result of the failure to maintain a feedback policy, and/or the failure to exercise any oversight over the actions of Lt. Edwards, and/or the failure to train Lt. Edwards - all by Coordinator Thompson and Sheriff Krigbaum, Coordinator Thompson and Sheriff Krigbaum were the moving forces behind the injuries suffered by S.M. and Kayla K.W..

        WHEREFORE, Plaintiffs Mayer and K.W. pray the court for judgment for the amount of their respective compensatory damages against Coordinator Thompson in her individual capacity, Sheriff Krigbaum in his individual capacity, costs, attorney's fees and such other relief as the court finds to be just, meet and reasonable.

## COUNT III
## VIOLATION OF CIVIL RIGHTS, 42 U.S.C. §1983
## MONELL
## S.M. AND K.W. AGAINST LINCOLN COUNTY

99.    S.M. and K.W. incorporate all prior paragraphs.

100.    Because Coordinator Thompson was a policy maker, and because she is liable for the acts of Lt. Edwards under the cause of action against her stated in Count II, Lincoln County is liable as a matter of law for the injuries suffered by S.M. and K.W. as a result of the conduct of Lt. Edwards in Count II.[10]

101.    Because Sheriff Krigbaum was a policy maker, and because he is liable for the acts of Lt. Edwards under the cause of action against him stated in Count II, Lincoln County is liable as a matter of law for the injuries suffered by S.M. and K.W. as a result of the conduct of Lt. Edwards in Count II.[11]

WHEREFORE, Plaintiffs Mayer and K.W. pray the court for judgment against Lincoln County for the amount of their respective compensatory damages, costs, attorney's fees and such other relief as the court finds to be just, meet and reasonable.

## COUNT IV
## VIOLATION OF CIVIL RIGHTS, 42 U.S.C. §1983
## RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS
## C.A. AGAINST LT. EDWARDS

102.    Plaintiff C.A. incorporates all prior paragraphs.

103.    On information and belief when C.A. complained to members of the Drug Court Team about Lt. Edwards' comments and conduct toward herself and other young, attractive female Drug Court participants, Lt. Edwards used his power within the Drug Court Team and administrative structure to assure that she was terminated from the program.

---

[10] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).
[11] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

104.    Lt. Edwards undertook that action against C.A. in retaliation for her criticism of him and to silence her.

105.    As a result of her termination from Drug Court C.A. went to prison.

106.    When C.A. went to prison she:

    a.    Lost her liberty, and

    b.    Became a convicted felon.

107.    The conduct of Lt. Edwards violated C.A.'s rights to be free of retaliation for exercise of First Amendment rights.

108.    The right to be free of arrest and prosecution in retaliation for exercise of First Amendment rights is a constitutional right and is clearly established.[12]

109.    C.A.'s statements were protected by the First Amendment.

110.    Time in prison, acquiring a felony conviction and the other listed damages are the kinds of events which would deter a person of ordinary firmness from the exercise of First Amendment rights, including the utterance of the statements C.A. made in this case.[13]

111.    Lt. Edwards cannot show he would have taken the same actions in the absence of the protected activity, that is, C.A.'s exercise of her First Amendment rights to criticize him before Drug Court personnel for his conduct.[14]

112.    The arrest and prosecution of Plaintiffs were therefore in violation of Plaintiffs' rights protected by the First Amendment to the United States Constitution.

---

[12] *City of Houston v. Hill*, **482 U.S. 451 (1987),** *Gouled v. U.S.***, 255 U.S. 298(1921),** *Buffkins v. City of Ohama***, 922 F.2d 465 (8th Cir. 1990)**
[13] *Garcia v. City of Trenton***, 348 F.3d 726, 728 (8th Cir. 2003).**
[14] *Kennedy v. Villa Hills***, 09-6442, (6th Cir. 2011), p. 12.**

WHEREFORE, Plaintiff C.A. seeks judgment against Lt. Edwards for compensatory damages, costs, attorney's fees and such other relief as the court finds to be just, meet and reasonable.

## COUNT V
## VIOLATION OF CIVIL RIGHTS, 42 U.S.C. §1983
## RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS - POLICIES
## C.A.
## AGAINST COORDINATOR THOMPSON AND SHERIFF KRIGBAUM

113.   Plaintiff C.A. incorporates all prior paragraphs.

114.   In the alternative, Coordinator Thompson designed or was responsible for the policies which enabled Lt. Edwards to have C.A. terminated from Drug Court as outlined in Count IV.

115.   Sheriff Krigbaum was responsible for the policies which enabled Lt. Edwards to have C.A. terminated from Drug Court as outlined in Count IV.

116.   In designing and/or retaining policies which allowed Lt. Edwards, all without oversight, to:

   a.   Be responsible as Tracker for the supervision of the participants in Drug Court, including making home visits, coordinating drug screenings, verifying employment, and determining compliance with directives,

   b.   Have direct contact with the judge, and

   c.   Have persons terminated from Drug Court on the basis of his recommendation,

Coordinator Thompson and/or Sheriff Krigbaum were deliberately indifferent to the risk that Lt. Edwards would have a person terminated from Drug Court for criticizing him or threatening his position, all in violation of the participant's right to be free from retaliation for exercise of First Amendment rights.

117. There were no meaningful objective standards for the termination of a participant in Drug Court.

118. The actions of Coordinator Thompson and/or Sheriff Krigbaum in designing and or retaining these policies with these risks caused the retaliation to C.A..

119. Coordinator Thompson and/or Sheriff Krigbaum were the moving forces behind the retaliation suffered by C.A..

WHEREFORE, Plaintiff C.A. prays the court for judgment for her compensatory damages against Coordinator Thompson in her individual capacity, Sheriff Krigbaum in his individual capacity, costs, attorney's fees and such other relief as the court finds to be just, meet and reasonable.

## COUNT VI
## VIOLATION OF CIVIL RIGHTS, 42 U.S.C. §1983
## MONELL
## C.A. AGAINST LINCOLN COUNTY

120. Plaintiff C.A. incorporates all prior paragraphs.

121. Because Coordinator Thompson and/or Sheriff Krigbaum were  policy makers, and because each is liable for the acts of Lt. Edwards under the cause of action against her or him as stated in Count V, Lincoln County is liable as a matter of law for the injuries suffered by C.A. as a result of the conduct of Lt. Edwards in Count V.[15]

WHEREFORE, Plaintiff C.A. prays the court for judgment against Lincoln County for the amount of her compensatory damages, costs, attorney's fees and such other relief as the court finds to be just, meet and reasonable.

Respectfully Submitted,

   /s/ W. Bevis Schock   .

---

[15] ***Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).**

W. Bevis Schock, MBE# 32551, FedARN# 15278
Attorney for Plaintiff
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:     314-721-1698
Voice: 314-726-2322