IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

S.M., et al.,                                )
                                             )
    Plaintiffs,                          )        Cause No.:  4:12-cv-02276-PLC
                                             )
vs.                                          )
                                             )
LINCOLN COUNTY, MISSOURI, et al.             )
                                             )
    Defendants.                          )

### DEFENDANT LINCOLN COUNTY, MISSOURI'S TRIAL BRIEF

COMES NOW Defendant Lincoln County, by and through the undersigned counsel, and for its Trial Brief states to the Court as follows:

**A. Defendant Lincoln County Had No Authority To Supervise Edwards While He Was Working As Drug Court Tracker.**

1. The Legislature Authorized Circuit Courts To Form Drug Courts And Did Not Extend This Power To Counties Or Sheriff's Departments.

The Missouri State Legislature provided Circuit Courts with the power to create drug courts by way of RSMo. Section 478.001, which provides that **"[d]rug courts may be established by a circuit court**…[a] drug court shall combine **judicial supervision**, drug testing and treatment." (e*mphasis added*) Id.

RSMo. Section 478.003 provides that:

> [I]n any judicial circuit of this state, a majority of the judges of the circuit court may designate a judge to hear cases arising in the circuit subject to the provisions of sections 478.001 to 478.007. In lieu thereof and subject to appropriations or other funds available…**circuit court may appoint a person or persons to act as drug court commissioners**…The qualifications and compensation of the commissioner shall be the same as that of an associate circuit judge…. (e*mphasis added*)  Id.

RSMo. Section 478.005 states that:

> [E]ach circuit court shall establish conditions for referral of proceedings to the drug court… **drug court staff shall be provided with access to all records of any state or local government agency relevant to the treatment of any program participant**…and

1

shall not be disclosed to any person outside of the drug court, and shall be maintained by the court in a confidential file not available to the public." (e*mphasis added*) Id.

RSMo. Section 478.009 states:

> **[I]n order to coordinate the allocation of resources available to drug courts and the dockets or courts established by section 478.007 throughout the state, there is hereby established a 'Drug Courts Coordinating Commission' in the judicial department…**The supreme court shall designate the chair of the commission. The commission shall periodically meet at the call of the chair; evaluate resources available for assessment and treatment of persons assigned to drug courts or for operation of drug courts; secure grants, funds and other property and services necessary or desirable to facilitate drug court operation; and allocate such resources among the various drug courts operating within the state… There is hereby established in the state treasury a Drug Court Resources Fund, which shall be administered by the drug courts coordinating commission. (*emphasis added*) Id.

There is no doubt that the Drug Court in this case was formed pursuant to Missouri law and that the legislature intended for it to be organized and managed by the 45th Judicial Circuit Court. Plaintiffs have erroneously alleged that Defendant Lincoln County had the ability to supervise the Drug Court Team. As a matter of law, Defendant Lincoln County lacked the legal authority to supervise, and/or establish Drug Court policies for the Drug Court Team and cannot be held liable under Section 1983 for deliberate indifference to responsibility that did not exist for Edwards' unlawful actions or Plaintiffs' injuries resulting therefrom.

2. The Adult Drug Court For The 45th Judicial Circuit Of Missouri Is Subject To Judicial Supervision.

RSMo. Section 478.186.1 established the formation of the 45th Judicial Circuit Court in Missouri to serve Lincoln and Pike Counties, and, in accordance with the above-cited statutes, the Circuit Court chose to establish a Drug Court. Id.

Local Rule 1 for the 45th Circuit Court states that:

> [T]he Forty-Fifth Judicial Circuit shall for the purposes of these rules be composed of Divisions I, II, III and IV, and there shall be the following divisions within the Circuit Court…**Drug Court** (including various tracks thereof)…" (e*mphasis added*) Id.

The Missouri Court's website describes the purpose and format of drug courts, as follows:

> [T]reatment courts are **judicially-supervised** court dockets that reduce correctional costs, protect community safety and improve public welfare. In treatment courts, drug-addicted individuals remain in treatment for long periods of time while under close supervision…**A treatment team is responsible for implementing daily operations of a specialized docket.** The treatment team may include, but is not limited to, the following members: a judge, prosecuting attorney, defense attorney, Administrator, probation officer, licensed treatment provider and **law enforcement**. (e*mphasis added*) The Missouri Courts Webpage at http://www.courts.mo.gov/page.jsp?id=250.

The Drug Court at issue in this case is the 45th Judicial Circuit Adult Drug Court Policies and Procedures Manual dated July 2010 ("Manual") that was in place in July 2010 states that it is "…an intensive **court supervised**, comprehensive treatment program…" (*emphasis added*) Id.

Pursuant to the Manual, the Judge, Drug Court Commissioner, Prosecutor, Defense Attorney, Administrator, Law Enforcement Officer, Treatment Specialist, Probation and Parole Officer, and Tracker make up the "Drug Court Team" *Defendant's Exhibit H, pp. 4-5*. The Manual specifies that the Tracker's contact with Drug Court participants is "…determined by the Drug Court Team." And it further provides that when the Tracker finds a participant has violated a Drug Court policy that "…he will contact the Judge to determine if the participant should be taken into custody…" Id. at page 8.

Under Missouri law, the Court Rules, and the Drug Court's own Manual, it is clear that the Drug Court was to be supervised directly by the Judge or Commissioner, as a division of the 45th Judicial Circuit Court.  It is also clear that while working in his part-time role as Tracker, Edwards was a Drug Court Team member, and his duties/assignments and supervision were dictated by the Drug Court Judge or Commissioner and the Drug Court Team.

Defendant Lincoln County never assumed responsibility or management of Edwards while he was working as Tracker for the Drug Court nor did it have legal authority to do so.

3.  <u>Defendant Lincoln County, Missouri Lacked Authority To Supervise Or Dictate Policies For The Drug Court And The Drug Court Team.</u>

<u>Mo. Const. Article II, Section 1</u> provides as follows:

> [T]he powers of government shall be divided into three distinct departments--the legislative, executive and judicial--each of which shall be confided to a **separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others**, except in the instances in this constitution expressly directed or permitted. (e*mphasis added*) <u>Id.</u>

<u>Mo. Const. Article V, Section 1</u> states that "[t]he judicial power of the state shall be vested in a supreme court, a court of appeals consisting of districts as prescribed by law, and **circuit courts**." *(emphasis added)* <u>Id.</u>

<u>Mo. Const. Article V, Section 15</u>, addresses the organization of circuit courts in the State of Missouri, as follows:

> 1. The state shall be divided into convenient circuits of contiguous counties. In each circuit there shall be at least one circuit judge. The circuits may be changed or abolished by law as public convenience and the administration of justice may require…**The circuit judges of the circuit may make rules for the circuit** not inconsistent with the rules of the supreme court…
>
> 3. The circuit and associate circuit judges in each circuit shall select by secret ballot a circuit judge from their number to serve as presiding judge. **The presiding judge shall have general administrative authority over the court and its divisions**.
>
> 4. **Personnel to aid in the business of the circuit court shall be selected as provided by law**… *(emphasis added)* <u>Id.</u>

It is clear that the Circuit Court is a distinct entity under the Judicial Division of the State of Missouri, and not a department of Defendant Lincoln County.

Defendant Lincoln County is governed by a Commission comprised of three elected commissioners. <u>RSMo. Section 49.010</u>.  "A county [commission] is only the agent of the county with no powers except those granted and limited by law." <u>Jensen v. Wilson Tp. Gentry County</u>, 145 S.W.2d 372 (Mo. 1940).  There is no statute or law granting county commission a role in

4

Circuit Court administration. RSMo. Chapter 57 dictates what powers and authority belong to county sheriffs elected in Missouri, and, nowhere in this Chapter, are they granted power over divisions of the Circuit Court or staff members thereof.

No Missouri statute has extended counties or sheriff's departments the power to supervise, or dictate policies applicable to Circuit Courts, drug courts, or court staff members. Furthermore, due to the constitutionally mandated separation of powers, as a matter of law, Defendant Lincoln County had no authority over Edwards while he was working in his secondary position as Tracker for the Drug Court.

**B. Plaintiffs' Claims Against Defendant Lincoln County Based On Municipal Liability Under 42 U.S.C. Section 1983 Are Unsupported.**

1. Monell Liability.

The 8th Circuit Court of Appeals explained municipal liability under Section 1983 and the test for Monell Liability, as follows:

> Although the Supreme Court has held that a municipality is a person that can be liable under § 1983, it is well established that a municipality **cannot be held liable on a respondeat superior theory**, that is, solely because it employs a tortfeasor. Section 1983 liability for a constitutional violation may attach to a municipality if the violation **resulted from**:
>
> (1) an official municipal policy,
> (2) an unofficial custom, or
> (3) a deliberately indifferent failure to train or supervise. (*emphasis added*) (*internal citations omitted*) Atkinson v. City of Mountain View, Mo., 709 F.3d 1201, 1214 (8th Cir. 2013).

In Atkinson, the 8th Circuit further explained the analysis of Section 1983 claims filed against municipalities, as excerpted below:

> Under federal law, Plaintiffs must be able to cite a …policy or custom, written or unwritten, that that was a moving force [behind] the constitutional violation Id.
>
> **Where there is no evidence of a facially unlawful policy or custom for 1983 liability to attach to a municipality there must be evidence presented that some municipal action or inaction, taken with deliberate indifference** as to its known or obvious

5

consequences," caused the Plaintiffs' injuries (*internal citations omitted*) (*emphasis added*)…. Id. at 1216.

[A] municipality **may not be held liable under § 1983 merely because it 'failed to implement a policy that would have prevented an unconstitutional act by an employee otherwise left to his own discretion**. Notice is the touchstone of deliberate indifference in the context of § 1983 municipal liability. (*emphasis added*) (*internal citations omitted*) Id.

**Under § 1983, a claim for failure to supervise requires the same analysis as a claim for failure to train. Neither claim can succeed without evidence the municipality received notice** of a pattern of unconstitutional acts committed by its employees…**Absent some form of notice, the city cannot be deliberately indifferent to the risk that its training or supervision**…would result in a violation of a particular constitutional or statutory right. (*emphasis added*) (*internal citations omitted*) Id. at 1216-17.

2. Notice And Causation Are Required Elements Of Deliberate Indifference.

In Parrish v. Ball, 594 F. 3d 993 (8th Cir. 2010), the 8th Circuit Court of Appeals heard a case, **directly on-point** with our present facts, and found that the county **was not** liable under a Section 1983 claim for sexual misconduct committed by an officer against a detainee due to 1) lack of notice; and 2) no proof of causation. In Parrish, the Court of Appeals stated that:

**Even though the training Fite received was minimal at best, that finding alone will not satisfy a § 1983 claim for failure to train**. (*emphasis added*) Id. at 997.

Instead, to satisfy the standard, Parrish must demonstrate that in light of the duties assigned to specific officers ... the need for more or different training is so obvious, and the inadequacy **so likely to result in the violation** of constitutional rights, that the policymakers of the [county] can reasonably be said to have been **deliberately indifferent** to the need…. In other words, [Parrish] **must demonstrate that the [county] 'had notice that its procedures were inadequate** and likely to result in a violation of constitutional rights.' (*emphasis added) (internal citations omitted*) Id. at 997-998.

Also, in Parrish, the Court held that the county was not liable for the officer's actions because the plaintiff could not meet the causation element of a Section 1983 action and failed to prove "…**deliberate conduct of the county was the moving force behind the injury alleged**." (*emphasis added)* Id. at 1000. The 8th Circuit explained that a causal connection between a lack

of training and an officer committing sexual misconduct was "**too remote to say the county's actions caused the assault**." Id.

The Court held that, "Parrish has not demonstrated the close relationship necessary to conclude that the county's failure to train Fite that sexual assault constitutes a felony caused Fite to sexually assault Parrish." *(emphasis added)* Id. at 1000-1001.

Another case that speaks to the causation prong of deliberate indifference is Andrews v. Fowler, 98 F.3d 1069 (8th Cir. 1996). Like the present case and above-cited Parrish case, the Andrews case also involved police officer sexual misconduct and included a Section 1983 claim filed against a municipality on a failure to train theory. In Andrews, the 8th Circuit held as follows:

> In light of the regular law enforcement duties of a police officer, **we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women.** Moreover, even if the training was in some manner deficient, the identified deficiency in a city's training program must be **closely related** to the ultimate injury such that that deficiency in training actually cause the police officers' offending conduct. Andrews simply cannot demonstrate the close relationship necessary to conclude the city's failure to properly train Fowler caused him to rape Andrews or even raises a question of fact as to causation. (e*mphasis added)* (*internal citations omitted*) Id. at 1077.

Also, in Connick v. Thompson, 563 U.S. 51 (2011), the United States Supreme Court, discussed Monell Liability under a failure to train theory which, pursuant to the Atkinson case cited above, **is the same analysis** as that used for failure to supervise claims. In Connick, the Supreme Court provided that:

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens rights may rise to the level of an official government policy for purposes of § 1983. **A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.** To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to **deliberate indifference to the rights of persons with whom the untrained employees come into contact**. Only then can such a shortcoming be properly

thought of as a city policy or custom that is actionable under § 1983. (*internal citations omitted*) (*emphasis added*) Id. at 61.

**Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action**. (*emphasis added*) Id.

Thus, when city policymakers are on **actual or constructive notice** that a particular omission in their training program causes city employees to violate citizens constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's "**policy of inaction**" **in light of notice** that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution. **A less stringent standard of fault for a failure-to-train claim would result in de facto respondeat superior liability on municipalities**. (*internal citations omitted*) (*emphasis added*) Id. at 61-62.

Also, in Walton v. Dawson, 752 F.3d 1109 (8th Cir. 2014), the 8th Circuit Court of Appeals reiterated that the Plaintiff has the burden of proving deliberate indifference for municipal liability to occur under Section 1983. In Walton, the Court made it clear that the test for deliberate indifference still requires proof of actual notice or **constructive notice** of an obvious risk. Id.

Recently, in Jiang v. Porter, No. 4:15-CV-1008 (CEJ), 2015 WL 9461490, (E.D. Mo. Dec. 28, 2015), the District Court analyzed Section 1983 claims filed against a municipality premised, among other things, on a **failure to supervise** claim. In Jiang, this Court reiterated again that failure to train and failure to supervise claims have the same analysis, and relied on some of the same cases cited above by Defendant Lincoln County.

The Monell analysis applied to the present case should be the same as that contained in Jiang and, for that purpose alone, it is excerpted below:

[A] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train [or supervise]. The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference...(*internal citations omitted*) Id. at 7.

Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when city

8

policymakers are on **actual or constructive notice** that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. (*emphasis added*) Id.

**A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.** Under § 1983, a claim for failure to supervise requires the same analysis as a claim for failure to train. **Neither claim can succeed without evidence that the municipality received notice of a pattern of unconstitutional acts committed by its employees**. As such, a failure to supervise claim also may be maintained **only** if a defendant demonstrated deliberate indifference or tacit authorization of the offensive acts. (*internal citations omitted*) (*emphasis added*). Id.

**Absent some form of notice, the city cannot be deliberately indifferent to the risk that its training or supervision of its employees would result in a violation of a particular constitutional or statutory right**. In the absence of [facts] to support plaintiff's legal conclusions, there is no basis to hold the City of St. Louis liable under § 1983. *(internal citations omitted)* (*emphasis added*). Id.

*See also* the District Court's holdings in Pitts v. City of Cuba, 913 F.Supp. 2d, 688-703 (E.D. Mo. 2012) and Sastry v. City of Crestwood, 2011 WL 2938163 (Mo. E.D. 2011).

3. In The Present Case, Plaintiffs Cannot Establish Deliberate Indifference Required For Municipal Liability.

It is obvious that any liability in this case could only apply to the Circuit Court or Drug Team (if any such liability exists) and not to Defendant Lincoln County. Plaintiffs plead that a policy of no supervision or lack of a complaint policy in the Drug Court by which Plaintiffs could have complained about Edwards in his role as Drug Court Tracker violated the Plaintiffs' constitutional rights. As a matter of law, the allegation of inadequate Drug Court policies is not an allegation about inadequate County Sheriff Department policies—those are separate entities independent or one another. Furthermore, any failure to supervise Edwards in his role as Tracker was a failure of responsibility of the Drug Court, a division of the 45th Judicial Circuit, not the duty of Defendant Lincoln County.

It is an undisputed fact that Drug Court Team training, assignments and day-to-day supervision, inclusive of Edwards, fell to Graham-Thompson and/or the Judge and Commissioner of the Drug Court. These matters did not involve Defendant Lincoln County or former Sheriff Krigbaum or any other County policy maker, as Graham-Thompson was deemed to not be a County policy maker by the District Court.  And, as discussed in the above-cited case law, municipal liability only arises due to the action, or inaction, of those with policy making authority.

For municipal liability to exist under Section 1983, a showing of deliberate indifference by actual notice or constructive notice by a pattern of like misconduct is required. Here, Plaintiffs cannot meet this high burden of proof against Defendant Lincoln County. Defendant Lincoln County – having no notice—actual or by way of a pattern of like conduct—to the violation of Plaintiffs' constitutional rights - cannot be held liable for Edwards' misconduct under Monell.

Moreover, the undisputed facts establish that Judge Burkemper, Commissioner Sullivan, and Graham-Thompson handled prior complaints lodged against Edwards while acting as Drug Court Tracker internally amongst the Drug Court Team and never notified any County policy maker or County Commissioner of the complaints.

Further the policy makers of Defendant Lincoln County, as well as Edwards himself, had the impression and/or belief that the Circuit Court and Drug Court personnel were supervising Edwards in his position as Drug Court Tracker. There was no obvious risk to the Plaintiffs' constitutional rights that placed Defendant Lincoln County on any notice that Edwards would sexually assault the Plaintiffs. Without evidence that Defendant Lincoln County had, at a minimum, constructive notice required for a finding of "deliberate indifference," Plaintiffs'

10

claims for municipal liability under Section 1983 must fail. Negligence or any possible negligent failure to supervise, is not enough for municipal liability under Section 1983.

Pursuant to the law contained in the above-cited Parrish and Andrews cases, any causal connection between Defendant Edwards' unlawful conduct and an alleged lack of policies/failure to supervise is too remote to impose liability on Defendant Lincoln County. Plaintiffs cannot meet their high burden of proving action or inaction by Defendant Lincoln County or the County policy maker, was the "moving force" behind Edwards' misconduct, which caused the deprivation of Plaintiffs' constitutional rights. There is no factual basis to support the contention that with better supervision, Edwards would not have committed these unlawful acts and violated the Plaintiffs' constitutional rights. With or without adequate supervision, reasonable people do not commit and, under the law, it is not assumed that they will commit such egregious misconduct. The 8th Circuit Court of Appeals' Opinion, which considered former Sheriff Krigbaum's defense of qualified immunity, also made certain findings of fact and conclusions of law that are relevant to this Court's analysis of municipal liability, and are excerpted below:

> …**Being aware that Edwards violated jail policy by taking Drug Court participants out for a cigarette break falls far short of notice of a pattern of conduct that violated Plaintiffs' rights to substantive due process**. *[Doc. 105, pgs. 6-7]*

> …[A] 2012 incident in which Krigbaum hugged and kissed his female deputy. **This conduct occurred two years after Edwards' firing and did not involve similar misconduct** *[Doc. 105, p. 7 footnote 2]*

> The Drug Court's multi-agency membership resulted in significant confusion and ignorance regarding who was supervising Edwards on a day-to-day basis when he served as Tracker. In denying summary judgment, the district court declared that Krigbaum's "ability and duty to supervise Edwards" is a genuine issue of material fact. *[Doc. 105, p. 8]*

> On appeal, citing no supporting authority, **Plaintiffs assert that failing to supervise when one has a duty to supervise is to be deliberately indifferent. We reject this contention.** Krigbaum could not be deliberately indifferent in failing to satisfy a duty he

11

did not know he had. **Liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process**. *[Doc. 105, p. 8]*

**The claim that Sheriff Krigbaum unreasonably failed to exercise a duty to supervise Edwards to prevent him from harming plaintiffs is a claim of negligence that cannot be the basis of a constitutional tort claim**. *[Doc. 105, p. 8]*

**Krigbaum had no information that would have raised an inference** that Edwards was violating his training and duties as a police officer by sexually assaulting the Drug Court participants he monitored. *[Doc. 105, p. 9]*

Finally, Plaintiffs argue that Sheriff Krigbaum should be denied qualified immunity from their claims of inadequate policy based on Krigbaum's failure to enforce the policy requiring Sheriff's Department deputies to call in mileage when transporting persons of the opposite sex. A supervisor may be liable if he is involved in creating, applying, or interpreting a policy that gives rise to unconstitutional conditions. **The policy in question was designed to protect persons; it did not give rise to unconstitutional conditions**. *[Doc. 105, p. 9]*

It appears that the 8th Circuit Court of Appeals found that the Plaintiffs provided no support to the proposition that there was a pattern of misconduct in Defendant Lincoln County or the Sheriff's Department sufficient to amount to constructive notice of Edwards' misconduct. Further, any reliance Plaintiffs put on a Sherriff's Department mileage requirement is irrelevant, there being no evidence that transportation deviation was an issue in this case. The Court also seems to find, as excerpted above, that a lack of understanding as to which entity – Circuit Court or County – was responsible for supervising Edwards as Drug Court Tracker, would only amount to **negligence**. And, as discussed above, negligence is **insufficient** for municipal liability under Monell, where an express finding of deliberate indifference – notice and causation - is required. Furthermore, Sheriff Krigbaum is the only policy-maker against whom the Plaintiffs allege had notice of Edwards' unconstitutional actions. And, the Court of Appeals made findings that appear to resolve that Krigbaum had no actual or constructive notice of Edwards' misconduct based on facts and evidence in the record.

12

In order to support a claim of "deliberate indifference" there must be notice or constructive notice to some person in a "policy making" position that Edwards' lack of supervision would directly result in or create an obvious risk of sexual assault on Drug Court participants. Plaintiffs have no facts or evidence to meet this high burden of proof.

C. **Conclusion.**

Defendant Lincoln County lacked the legal authority necessary to supervise or establish policies for the Drug Court and the Drug Court Team. The only entity with the power to supervise, or establish policies for the Drug Court and the Drug Court Team is the 45th Judicial Circuit. Furthermore, Plaintiffs failed to establish that the County through its policy makers was "deliberately indifferent" to the need for supervision of Edwards, having no notice of a problem or potential problem. As a matter of law, Defendant Lincoln County should prevail on Plaintiffs' claims.

**BARKLAGE, BRETT & HAMILL**

By:   */s/ Joel D. Brett*
Joel D. Brett,   #33471MO
Katherine R. Moore, #59805MO
211 North Third Street
St. Charles, Missouri 63301
(636) 949-2120 – *Telephone*
(636) 949-8786 – *Facsimile*
jbrett@barklage-brett.com
kmoore@barklage-brett.com

*Attorneys for Defendant Lincoln County*

13

## CERTIFICATE OF SERVICE

I Joel D. Brett, hereby certify that a true and accurate copy of the foregoing was served by Notice of Electronic Filing with the Court's CM-ECF filing system this 1st day of July, 2016, on:

W. Bevis Schock
SCHOCK LAW
7777 Bonhomme Ave.
Suite 1300
St. Louis, MO 63105
wbschock@schocklaw.com

Hugh A. Eastwood
7777 Bonhomme Ave.
Suite 1603
St. Louis, MO 63105
heastwood@eastwoodlawstl.com

*Attorneys for Plaintiffs and Intervenor Plaintiffs*

Michael J. Fagras
LAMPIN AND FAGRAS, LLC
5770 Mexico Road
St. Peters, MO  63376
mfagras@hotmail.com

*Attorney for Intervenor Plaintiffs*

I further certify that a signed original of the foregoing documents is on file in the law office of Barklage, Brett & Hamill, P.C.

                                           */s/ Joel D. Brett*
                                           Joel D. Brett, #33471MO