UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| S.M., *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 4:12-cv-02276-PLC |
| v. ) | |
| ) | |
| LINCOLN COUNTY, *et al.* ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS S.M. AND K.W. AND INTERVENORS K.S. AND L.M.'S
OMINBUS RESPONSE
TO DEFENDANT LINCOLN COUNTY'S PRE-TRIAL FILINGS**

Come now Plaintiffs S.M. and K.W. by counsel W. Bevis Schock and Hugh A. Eastwood, and Intervenors K.S. and L.M. by counsel W. Bevis Schock, Hugh A. Eastwood and Michael J. Fagras (collectively Plaintiffs), and state for their Omnibus Response to Defendant's Pre-Trial Filings:

**DEFENDANT'S TRIAL BRIEF**

Defendant Lincoln County's Trial Brief restates the arguments Defendant Lincoln County made in its Second Motion for Summary Judgment. The court denied that Motion, Doc. #: 150.

Plaintiffs' response to Defendant Lincoln County' Trial Brief tracks their response to Lincoln County's Second Motion for Summary Judgment:

In its opinion in this case at footnote 3, *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015), ("Eighth Circuit Opinion"), the Eighth Circuit. stated:

> The Supreme Court applied an objective standard of deliberate indifference to a failure-to-supervise claim against a municipality in *Canton v. Harris,* 489 U.S. 378, 390 (1989). We noted this distinction in *Walton v. Dawson*, 752 F.3d 1109,

1117–18 (8th Cir. 2014), and the Supreme Court carefully explained it in *Farmer v. Brennan,* 511 U.S. 825, 840-842 (1994)

The *Farmer* court said in relevant part at 840 and 842:

> And even if "deliberate" is better read as implying knowledge of a risk, the concept of constructive knowledge is familiar enough that the term "deliberate indifference" would not, of its own force, preclude a scheme that conclusively presumed awareness from a risk's obviousness.
>
> …
>
> Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.
>
> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, … and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. Cf. LaFave & Scott § 3.7, p. 335 ("[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of".

In *Walton* Plaintiff asserted substantive due process violations against the supervisor in his individual capacity and against the local government entity for failure to supervise sexual assault in the pretrial detention context.  As to the latter *Walton* is on four squares with the current issue.  The court wrote:

> To succeed on a claim under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee such as Walton must show the defendant official was *deliberately indifferent* to his rights. *See Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir.2006).  "Deliberate indifference" is a polysemous phrase. As applied to a prison official in the Eighth Amendment context, the Supreme Court has made it clear "deliberate indifference" requires subjective knowledge: no liability attaches "unless the official *knows of* and disregards an excessive risk to inmate health and safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994) (emphasis added). **However, as applied to a municipality in the Fourteenth Amendment context, "deliberate indifference" is purely objective: "liability [may] be premised on obviousness or *constructive notice*."** *Id.* at 841, 114 S.Ct. 1970 (emphasis added); see also *City of Canton v. Harris,* 489 U.S. 378, 390 (1989). But the Supreme Court has never specified whether "deliberate indifference" is subjective

or objective in the context of a Fourteenth Amendment claim against a municipal prison official.  *See, e.g., Spencer v. Knapheide Truck Equip. Co.,* 183 F.3d 902, 905–06 (8th Cir.1999).

Without expressly answering this question, we have used *Farmer's* subjective measure of deliberate indifference to evaluate Fourteenth Amendment claims by pretrial detainees against prison officials. *See, e.g., Holden v. Hirner,* 663 F.3d 336, 341 & n. 3 (8th Cir.2011).  We recognize the potential inconsistency this approach creates: the same claim (failure to train) by the same plaintiff (a pretrial detainee) arising under the same constitutional provision (the Due Process Clause of the Fourteenth Amendment) uses the same standard (deliberate indifference) in different ways depending on whether the defendant is the municipality or its employee.  **Theoretically, this could make a municipality liable for a risk it *should have* known of even if all of its employees in supervisory roles *did not* know of the risk and are thus not liable**.  *Compare Canton,* 489 U.S. at 390 & n. 10 (explaining a municipality may be liable because the risk was "obvious" or "must have been plainly obvious"), *and id.* at 396 (O'Connor, J., concurring and dissenting) (emphasizing that "actual or constructive notice" is enough), *with Farmer,* 511 U.S. at 841 ("*Canton's* objective standard ... is not an appropriate test for determining the liability of prison officials under the Eighth Amendment.").  (Emphasis added).

To repeat the quote from *Walton*:

> [the local government entity is liable] for a risk it *should have* known of even if all of its employees in supervisory roles *did not* know of the risk and are thus not liable… [The risk] must have been plainly obvious.

That is the issue this case.  The question before the jury is whether the risk was obvious. (Naturally there will be a secondary issue that there was no supervision as stated in Plaintiff's proposed verdict director below, but Plaintiffs anticipate no evidence that there was any supervision).

Plaintiffs note that Lincoln County concedes at p. 8 of its trial brief that:

> In <u>Walton</u> the Court made it clear that the test for deliberate indifference still requires proof of actual notice or constructive notice of an obvious risk.

Plaintiffs bring to the court's attention that in the case's many years of litigation Plaintiffs have never asserted actual notice and have always relied on constructive notice.  In light thereof

3

Plaintiffs in their Motion in Limine no. 23 have moved the court to prohibit Lincoln County from asserting or implying that Plaintiffs must prove actual notice.

## VERDICT DIRECTORS AND PACKAGING

Defendants have submitted numerous verdict directors.  Plaintiffs suggest that those verdict directors do not accurately reflect the theory on which Plaintiffs are proceeding in this case, and so are irrelevant.  Plaintiffs are proceeding on an objective deliberate indifference claim.  As the Eighth Circuit explained in *Walton* at 1117-18*, above,* in the context of a municipality deliberate indifference means that a risk is either objectively obvious or that the municipality objectively has constructive notice.  Here, Plaintiffs are proceeding on the obviousness of the risk.

Plaintiff's proposed verdict director as submitted on July 1, 2016 pursuant to the Case Management Order, which does reflect the theory on which Plaintiffs are proceeding in this case, reads:

> Your verdict must be for Plaintiff S.M., K.W., L.M. and/or K.S., and against Defendant Lincoln County on that Plaintiff's claim for violation of her civil rights if all the following elements have been proved:
>
> *First*, Lt. Scott Edwards had sexual contact with that Plaintiff, and
>
> *Second*, Lincoln County failed to supervise Lt. Edwards' tracking of Drug Court participants, and
>
> *Third*, Lincoln County should have known of the risk that Lt. Edwards would have sexual contact with Drug Court participants because the risk was obvious,
>
> *Fourth*, as a direct result that Plaintiff was damaged.

4

If any of the above elements has not been proved, then your verdict on this claim must be for Defendant Lincoln County.

Plaintiff suggests to this court that this Verdict Director is exactly in line with the cause of action outlined in *Farmer*, *Walton* and the other cited cases.

Plaintiffs also note that their submission eliminates the need for packaging, and so Plaintiffs further suggest that this court not use packaging.  The jury can make its findings on one Verdict form as previously submitted by Plaintiff.

Plaintiffs also suggest that Instruction 2.11 is inappropriate because Lt. Edwards will not testify but rather will appear by deposition.  Further the truth of his misconduct is not a disputed fact nor an issue for the jury.

## STANDARD INSTRUCTIONS

Plaintiffs believe the standard instructions are undisputed.

## LINCOLN COUNTY'S EXHIBITS

Lincoln County offers as Exhibits A-E various statutes and rules regarding Drug Court's relationship to Lincoln County.  Plaintiff suggests that those exhibits are confusing and irrelevant and so Plaintiffs object to their introduction.  Particularly, those Exhibits invite the jury to make conclusions of law that "the Drug Court" or the "45th Judicial Circuit" is liable, which would be incorrect.  Defendant Lincoln County should not be allowed to argue "blame Drug Court" or "blame the 45th Judicial Circuit".

As has been well established by Plaintiffs in prior pleadings, Lt. Scott Edwards, the perpetrator of the misconduct at issue herein, was a paid Employee of Lincoln County and was part of a network of officials, many of them Lincoln County employees, who made up the Drug Court team.  The Drug Court team was merely a team of persons connected by a Memorandum

of Understanding and is not a distinct legal entity.  Among those on the Team were officials who were paid by Lincoln County and therefore also part of the Lincoln County government, e.g. (1) Heather Graham-Thompson, the Drug Court Administrator, (2) Grace Sinclair, the elected Lincoln County Circuit Clerk, and (3) Sheriff Michael Krigbaum, the elected Lincoln County Sheriff.

Exhibits tending to show that Drug Court was separate from Lincoln County would be a red herring to the jury because those Exhibits have nothing to do with (1) the lack of supervision by the County officials, and (2) as stated in Plaintiff's Element Third:  whether "Lincoln County should have known of the risk that Lt. Edwards would have sexual contact with Drug Court participants because the risk was obvious".

Plaintiffs have no objection to the introduction of Defendant's Exhibit F, the Drug Court Policies and Procedures Manual; Plaintiffs will offer as exhibits their versions of that document as signed by each Plaintiff.

## WITNESSES

Plaintiffs have no objection to any of Defendant's witnesses.  The only complexity may be the presentation of video testimony from Lt. Edwards.  During their case Plaintiffs will present testimony from Lt. Edwards by reading both the question and answer from the deposition.  Lincoln County indicates in its pretrial filing that it may present evidence from Lt. Edwards by the actual video of the deposition.  While Plaintiffs of course have no objection to Defendants repeating any sections which Plaintiffs believe to be sufficiently relevant that Plaintiffs present it themselves, such repetition, if more than minor, is not an economical use of the court and the jury's time.

6

Eighth Circuit Model Jury Instruction 2.15 contemplates that deposition testimony normally is to be read to the jury rather than played by videotape.  Complications arise from the use of videotape depositions as evidence.  Particularly, courts have generally held that there must be a legitimate purpose for showing the video testimony as opposed merely to reading from a deposition.  A critical factor is whether, in a trial where paper depositions are used, the limited use of a videotape deposition prejudicially and improperly exalts to the importance of that limited portion of the discovery over live testimony or read deposition excerpts.  *See, e.g., Hynix Semiconductor Inc. v. Rambus Inc.,* 2008 WL 190990, at *1 (D. Cal. Jan. 21, 2008).  The Missouri Supreme Court holds that the proper inquiry for the admissibility of any videotape is whether the video is practical, instructive, and calculated to assist the trier of fact in understanding the case.  *Cf. Saint Louis Univ. v. Geary,* 321 S.W.3d 282 (Mo. 2009).  Here Plaintiffs are cautious that a few cherry-picked few moments of videotape may be used to exalt certain portions of Lt. Edwards' deposition over other portions.  That would be improper.

Another fear is that since Lt. Edwards was not questioned as to his actual misconduct (for which he pleaded in open court) then the showing of the videotape, without a showing of his admission of his misconduct, will improperly suggest that his misconduct was not admitted or was not inquired of by counsel.  (Actually all counsel agreed not to question Lt. Edwards as to the sexual misconduct and so stipulated to the Court as a condition of the deposition order).  Plaintiffs fear that playing the video would open the door to an improper inference that Lt. Edwards' misconduct is at issue for the jury, or that the video will lull the jury into the banality of Lt. Edwards' evil.

Plaintiffs reserve the right up to the moment of the reading of the designations from Lt. Edwards to reduce the actual sections read.

## DEPOSITION DESIGNATIONS

Under Fed.R.Evid. 804(a) and (b) a witness must be unavailable in order for a party to read a witness's testimony or that testimony will be considered inadmissible hearsay not within an exception.

(Plaintiffs' original deposition designations included Judge Sullivan and others who are available for court. That submission was therefore in error. Plaintiff has submitted earlier on the date of this filing a revised set of deposition designations which designate testimony only from Lt. Edwards, who is in fact unavailable).

Plaintiffs object to Defendant Lincoln County reading from the depositions of the following persons:

1. James Sullivan. James Sullivan is a Circuit Judge in the City of St. Louis and therefore during the trial will be only a few hundred yards away from the trial court room. He is therefore presumably accessible to a process server with a subpoena.

2. Heather Graham-Thompson. As of this filing Plaintiffs already have Heather Graham-Thompson under subpoena for the trial of this case. She still works for Lincoln County as the Drug Court Administrator, so presumably she is also easily available to a process server.

3. Ben Burkemper. As of this filing Plaintiffs also already have Ben Burkemper under subpoena for the trial of this case. He now works as the administrator of the St. Louis County Juvenile Court, and his office is on the third floor of that court's building on Brentwood Boulevard in Clayton,

Missouri. (An appointment is recommended due to restricted access to the building).

## MOTIONS IN LIMINE

### Unobjected to Motions in Limine

Plaintiffs have no objections to the following two Motions in Limine from Lincoln County subject to the following caveats:

B. Collateral Source Payments. Plaintiffs do anticipate asking the routine insurance question during voir dire, and would ask the Court to allow such a question with the usual caveats including no follow up and no particular emphasis on the question. *See Bongartz v. State Farm Fire & Casualty Co.,* 1994 U.S. App. LEXIS 16492 (6th Cir. 1994) (discussing excusing for cause those prospective jurors who were insured with defendant insurer or its related companies).

I. Lincoln County Policy Not to Supervise Lt. Edwards. Plaintiffs do not assert there was an explicit Lincoln County Policy not to supervise Lt. Edwards and so have no objection to this Motion in Limine.

### Objected to Motions in Limine

Plaintiffs do have objections to the following Motions in Limine:

A. Employment Records from Lt. Edwards. Scott Edwards' employment records (Bates 246-47, 278-79, 304-05, 307-09) show that while employed by the City of Country Club Hills police he engaged in inappropriate behavior involving sexual language toward females and abused the power of his uniform for personal benefit. This information was available to Lincoln County in Edwards' personnel record at the time it hired him. Thus, while Plaintiffs have abandoned their

9

negligent hiring claim, nevertheless this evidence is *prima facia* evidence that shows the obviousness of the risk of misconduct by Lt. Edwards if he was not supervised. Indeed by contrasting Country Club Hills with Lincoln County, the jury may make an inference that an officer who is properly supervised will face timely discipline for misconduct for which there is an obvious risk.

      Plaintiffs will not raise irrelevant issues in Lt. Edwards' records, such as his alleged racial harassment of African Americans or his allowing a detainee to escape. The obviousness issue relates to the risk both as to Lt. Edwards personally and the general risk of male law enforcement officers engaging in sexual misconduct toward females—the latter being acknowledged by Sheriff Krigbaum in his deposition. That these incidents occurred some ten years before the incidents in this case is irrelevant because the prior incidents are not raised as character trait evidence, *cf.* Fed.R.Evid. 404, but rather as evidence of the risk.

C. Sexual harassment claims against Sheriff Krigbaum and Former Major Kent Henshaw. It is undisputed that Sheriff Krigbaum began hugging one of his female deputies while in a swimming pool at an office Christmas party and that the County ended up paying the deputy a sexual harassment settlement. It is also undisputed that Sheriff Krigbaum admitted in his that there needs to be supervision of an officer so that he won't be "violative", that is, so that the officer will not commit sexual misconduct on the job. Krigbaum Depo. at 96:19. The fact that Sheriff Krigbaum was Lt. Edwards' supervisor but could not even supervise himself as to actionable, unwanted sexual misconduct shows the objective obviousness of the risk of Lt. Edwards' misconduct and so is therefore

10

relevant. Lincoln County argues that sexual harassment is different from the sexual misconduct which occurred here. Plaintiffs suggest otherwise because each is in the nature of misconduct regarding sex, the risk of which is exactly what Plaintiffs allege to be obvious. Plaintiff also notes that the Eighth Circuit analysis of this issue related to Sheriff Krigbaum's qualified immunity, and not the issue of obviousness to Lincoln County, and that therefore the Eighth Circuit analysis does not control this issue. Lincoln County further argues that the fact that the swimming pool incident occurred after the central conduct at issue here renders it irrelevant. Plaintiffs disavow arguments that the conduct at issue was part of a pattern.

      The same argument applies to the conduct of Major Hanshew. In 2010 Major Hanshew engaged in sexual misconduct toward two female sheriff's deputies and was disciplined. Major Hanshew pinched one female deputy's buttocks, and pulled on another's spaghetti bra strap. He also made sexual comments about their buttocks. Krigbaum Depo. at 45-47. The incident is relevant because it shows that the Sheriff could and did discipline other officers for sexual misconduct, and that the risk of such misconduct was obvious.

D.   Heather Graham-Thompson's Alleged Knowledge, Notice, or Constructive Notice of Lt. Edwards's Misconduct. Plaintiffs do not assert that Heather Graham-Thompson had actual knowledge or actual notice of Lt. Edwards's misconduct. Plaintiffs do assert, as they have stated repetivitely herein, that the heart of their case is that she and others had constructive notice because the risk was obvious. Because that is the test of the Eighth Circuit as outlined above,

evidence of constructive notice is relevant to the precise issue at hand and should be admitted. Clues as to Lt. Edwards' behavior go to obviousness of risk, not knowlegde of harm, and are therefore relevant and not prejudicial, and so are admissible.

E. Evidence of Harassment Claim Against Sheriff Krigbaum. See "C" above.

F. Lt. Edwards taking Plaintiffs Out of the Jail for Cigarette Breaks. It is undisputed that Lt. Edwards took the Plaintiffs, attractive young females, completely out of the jail enclosure to smoke cigarettes and eat hamburgers from McDonald's. Plaintiffs seek to introduce evidence that this conduct with attractive young females was well known among those involved in Drug Court and that it was wholly improper, and so the evidence that Lt. Edwards was engaging in such conduct with Plaintiffs was an element of the obviousness of the risk of further misconduct. The Eighth Circuit questioned whether that event alone could be a pattern of misconduct, but whether that event alone is not the issue, because (a) Plaintiffs are showing that the risk of the misconduct was obvious, not that the misconduct was part of a pattern, and (b) Plaintiffs are not relying on that misconduct alone, but are relying on that fact as one of their twenty facts to establish obviousness of risk and not notice of the misconduct itself.

G. Sheriff Krigbaum's Actual Notice or Constructive Notice of Lt. Edwards's misconduct. The arguments regarding Sheriff Krigbaum parallel the arguments regarding Heather Graham-Thompson above in D, and Plaintiffs incorporate those arguments herein by reference. Further, Plaintiffs respectfully disagree with Lincoln County statement in para. 7 that the Eighth Circuit opinion states that

        Sheriff Krigbaum has no constructive notice of the misconduct of Lt. Edwards. The opinion only states that (a) he lacked actual notice, and (b) at 352 that he "had no information that would have raised an inference that Edwards was violating his training and duties as a police officer by sexually assaulting the Drug Court participants he monitored". The distinction between an inference that "Edwards was violating his training and duties as a police officer by sexually assaulting the Drug Court participants he monitored" and the conclusion that the risk was obvious is not an idle fine point. Here the County is the Defendant, where in the Eighth Circuit Krigbaum was the Defendant. Here Plaintiffs need only show that the risk was obvious. There Plaintiffs had to show that Sheriff Krigbaum actually knew.

H.    Testimony and/or Affidavit of C.A. f/k/a C.H. Plaintiffs will not offer the testimony or affidavit of C.A. f/k/a C.H. Plaintiff's may elicit testimony from other witnesses, however, about her situation to the extent that her situation is relevant to the question of the obviousness of the risk. Such testimony, of course, will be subject to the routine Fed.R.Evid. rules regarding hearsay. Defendants assert at para. 16 that statements of C.A. f/k/a C.H. to members of the Drug Court team are irrelevant because, for example, persons from the counseling service Bridgeways and/or the Office of Probation and Parole were not policy makers. Again Plaintiffs suggest that they do not seek *Monell* liability as a result of actions of persons who were policy makers. Plaintiffs seek *Monell* liability from the County because the risk was obvious and/or the County had constructive notice.

J.	Mileage Policy.  The mileage policy, that is the policy of the Sheriff's Department that officers transporting females and juveniles had to report their time and destination before departing from a given location so that there would be mathematical proof based on mileage traveled per amount of time that the officer did not stop and engage in hanky panky – a policy portentously not enforced on Lt. Edwards when he was working as Tracker – goes directly to the obviousness of the need to monitor officers around females and is therefore directly relevant to the issue in the case.  (Sheriff Krigbaum has testified that the policy was designed to protect both officers and detainees.)  Defendant correctly asserts that Lincoln County does not face liability merely because it failed to implement a policy.  The mileage policy and its lack of enforcement as to Edwards, however, is not relevant to liability for failing to have or enforce a policy – it is relevant as to the obviousness of the risk, because the existence of the policy shows the obviousness of the risk and that it was there to protect both officers and those being transported.

Respectfully submitted,

Attorneys for Plaintiffs and Intervenors

   /s/ W. Bevis Schock   .
W. Bevis Schock, 32551MO
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.Com
Fax:    314-721-1698
Voice: 314-726-2322

   /s/   Hugh A. Eastwood   .
Hugh A. Eastwood, 62058MO
7911 Forsyth Blvd., Ste. 300
St. Louis, Missouri 63105-3960
heastwood@eastwoodlawstl.com

Fax  (314) 863 5335
Vox  (314) 809 2343

Attorney for Intervenors Only

  /s/   Michael Fagras   .
Michael J. Fagras, 40842MO
5770 Mexico Rd., Ste. A
St. Peters, MO  63376
fagras@fagraslaw.com
Fax:    636-757-0198
Voice: 636-498-4000

## CERTIFICATE OF SERVICE

I hereby certify that on 7/05/2016 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

   /s/ Hugh A. Eastwood, 62058MO.