*Refused Patricia L. Cohen*

INSTRUCTION NO. _____A_____ Plaintiff's Alternative A

Plaintiff Sarah Mayers claims to have been injured as a result of Defendant Lincoln County's failure to properly supervise Scott Edwards as Drug Court Tracker and that this alleged failure may be considered the official policy of Defendant Lincoln County.

Your verdict will be for Plaintiff Sarah Mayers and against Defendant Lincoln County only if you find that:

*First*, the Lincoln County Sheriff, as policy maker for Defendant Lincoln County, was responsible for supervising Scott Edwards as Drug Court Tracker; and

*Second*, Defendant Lincoln County's supervision of Scott Edwards as Drug Court Tracker was inadequate; and

*Third*, the need for more supervision or different supervision was so obvious, and the inadequacy of the supervision so likely to create a risk of violations of constitutional rights, that one or more policymakers of defendant Lincoln County can reasonably be said to have been deliberately indifferent to the need for such supervision, and

*Fourth*, the failure of defendant Lincoln County to provide proper supervision was a cause of damage to that plaintiff.

If any of the above elements have not been proved by the greater weight of the evidence, then your verdict must be for Defendant Lincoln County, Missouri.

The definition of "deliberate indifference" to the rights of others is the conscious or reckless disregard of the consequences of one's acts or omissions. Deliberate indifference requires more than negligence or ordinary lack of due care.

Tendered by Plaintiff

Based on Eighth Circuit Model Jury Instructions 4.10 and O'Malley et al., Fed. Jury Prac & Instructions Civil (6th ed.) §165.27—Failure to Train.

In element second Plaintiffs have substituted for the O'Malley language "so likely to result in the

violation of constitutional rights", the language "so likely to create a risk of the violations of constitutional rights". Plaintiffs make this substitution because of the language in *Walton v. Dawson*, 752 F.3d 1109, 1118 (8th Cir. 2014). A municipality [may be] liable for a risk it *should have* known even if all of its employees in supervisory roles *did not* know of the risk and are thus not liable. *Compare Canton*, 489 U.S. at 390 & n. 10, 109 S.Ct. 1197 (explaining a municipality may be liable because the risk was "obvious" or "must have been plainly obvious"), *and id.* at 396, 109 S.Ct. 1197 (O'Connor, J., concurring and dissenting) (emphasizing that "actual or constructive notice" is enough).

In element fourth Plaintiffs have substituted "the cause" for the O'Malley language "a cause" based on O'Malley et al., Fed. Jury Prac & Instructions Civil (6th ed.) §165.27—Failure to Train.

As to the elements, see the oft cited case: *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992):

> To establish liability under *City of Canton*, "the plaintiff must prove ... that the training program at issue is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir.1989) (citing *City of Canton*).

Plaintiffs note that there is no requirement to identify the policy makers, or affirmatively prove what they did not know. See bold sections below from *Cash v. Cnty. of Erie*, allowing constructive notice and requiring personnel from the County to be proactive.

Definition of "deliberate indifference", O'Malley et al., Fed. Jury Prac & Instructions Civil (6th ed.) §165.41

1-8 Silver, Police Civil Liability §8.07[8] (Matthew Bender revised edition)—Supervisory Liability and Municipal Liability

1-8 Silver, Police Civil Liability §8.08[b][i] (Matthew Bender revised edition)—"Practice" as Policy

1-8 Silver, Police Civil Liability §8.08[b][iv] (Matthew Bender revised edition)—Informal Policy or Custom

1-8 Silver, Police Civil Liability §8.08[d] (Matthew Bender revised edition)—"Systemic Deficiencies" (Among the great difficulties of applying a "policy or custom" analysis is the question whether a municipality may be held liable for deprivation of constitutional rights caused by a concatenation of policies and practices, perhaps by different agencies. In this situation, it is uncertain whether any particular policy violated a right and, indeed, just which municipal agency or official "caused" the deprivation. Although liability may be conceptually difficult to justify, courts have held that an employer may be sued in these situations. (internal citations omitted))

*S.M. v. Krigbaum*, No. 14-3704 at 8 (8th Cir. Dec. 9, 2015) ("The Drug Court's multi-agency membership resulted in significant confusion and ignorance regarding who was supervising

Edwards on a day-to-day basis when he served as tracker.")

*City of Canton v. Harris,* 489 U.S. 3787, 388 (1989).

*Ware v. Jackson County, Mo.,* 150 F.2d 873, 882-884 (8th Cir. 1989).

*See also Cash v. Cnty. of Erie,* 654 F.3d 324, 334 (2d Cir. 2011):

> A municipal policy may be pronounced or tacit and reflected in either action or inaction. In the latter respect, a "city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Connick v. Thompson,* 131 S. Ct. 1350, 1360 (2011) (internal quotation marks omitted); *see also City of Canton v. Harris,* 489 U.S. 378, 396 (1989) (O'Connor, J., concurring in part and dissenting in part) ("**Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied**"). Consistent with this principle, "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 126 (2d Cir.2004) (Sotomayor, J.) (internal quotation marks omitted).
>
> Deliberate indifference may be inferred where "the need for more or better supervision to protect against constitutional violations was obvious," *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995), but the policymaker "fail[ed] to make meaningful efforts to address the risk of harm to plaintiffs," *Reynolds v. Giuliani,* 506 F.3d 183, 192 (2d Cir.2007); *see also Board of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 407 (1997) (holding that deliberate indifference requires proof that "municipal actor disregarded a known or obvious consequence of his action" (internal quotation marks omitted)); *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir.1992) (framing deliberate indifference inquiry in three parts: (1) policymaker knows "to a moral certainty" that its employees will confront a given situation; (2) either situation presents employees with difficult choice that will be made less so by training or supervision, or there is a record of employees mishandling situation; and (3) wrong choice by employees will frequently cause deprivation of constitutional rights (internal quotation marks omitted)).
>
> The existence of an affirmative duty to protect does not mean that any harm that befalls a person in state custody necessarily manifests a municipal policy of deliberate indifference to prisoner safety. **But an affirmative duty, by its nature, implies a proactive responsibility to assess the risks of harm presented by given circumstances and to take reasonable preventive measures in advance of harm occurring, not simply to respond to harms only after they occur.** *Cf. Farmer v. Brennan,* 511 U.S. 825, 845 (1994) (observing that deliberate indifference showing in parallel Eighth Amendment context "does not require a prisoner seeking a remedy for unsafe conditions to await a tragic event such as an actual assault before obtaining relief" (internal quotation marks and brackets omitted)).

*See also*: O'Malley et al., FJI Civil Companion Handbook (2015-2016) §9:4

*Reference* [illegible handwritten annotation] *Patrick*

INSTRUCTION NO. \_\_\_13\_\_\_\_ Plaintiff's Alternative A

Plaintiff Kayla Walker claims to have been injured as a result of Defendant Lincoln County's failure to properly supervise Scott Edwards as Drug Court Tracker and that this alleged failure may be considered the official policy of Defendant Lincoln County.

Your verdict will be for Plaintiff Kayla Walker and against Defendant Lincoln County only if you find that:

*First*, the Lincoln County Sheriff, as policy maker for Defendant Lincoln County, was responsible for supervising Scott Edwards as Drug Court Tracker; and

*Second*, Defendant Lincoln County's supervision of Scott Edwards as Drug Court Tracker was inadequate; and

*Third*, the need for more supervision or different supervision was so obvious, and the inadequacy of the supervision so likely to create a risk of violations of constitutional rights, that one or more policymakers of defendant Lincoln County can reasonably be said to have been deliberately indifferent to the need for such supervision, and

*Fourth*, the failure of defendant Lincoln County to provide proper supervision was a cause of damage to that plaintiff.

If any of the above elements have not been proved by the greater weight of the evidence, then your verdict must be for Defendant Lincoln County, Missouri.

The definition of "deliberate indifference" to the rights of others is the conscious or reckless disregard of the consequences of one's acts or omissions. Deliberate indifference requires more than negligence or ordinary lack of due care.

Tendered by Plaintiff

Based on Eighth Circuit Model Jury Instructions 4.10 and O'Malley et al., Fed. Jury Prac & Instructions Civil (6th ed.) §165.27—Failure to Train.

In element second Plaintiffs have substituted for the O'Malley language "so likely to result in the

violation of constitutional rights", the language "so likely to create a risk of the violations of constitutional rights".  Plaintiffs make this substitution because of the language in *Walton v. Dawson*, 752 F.3d 1109, 1118 (8th Cir. 2014).  A municipality [may be] liable for a risk it *should have* known even if all of its employees in supervisory roles *did not* know of the risk and are thus not liable. *Compare Canton,* 489 U.S. at 390 & n. 10, 109 S.Ct. 1197 (explaining a municipality may be liable because the risk was "obvious" or "must have been plainly obvious"), *and id.* at 396, 109 S.Ct. 1197 (O'Connor, J., concurring and dissenting) (emphasizing that "actual or constructive notice" is enough).

In element fourth Plaintiffs have substituted "the cause" for the O'Malley language "a cause" based on O'Malley et al., Fed. Jury Prac & Instructions Civil (6th ed.) §165.27—Failure to Train.

As to the elements, see the oft cited case: *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992):

> To establish liability under *City of Canton,* "the plaintiff must prove ... that the training program at issue is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Hill v. McIntyre,* 884 F.2d 271, 275 (6th Cir.1989) (citing *City of Canton*).

Plaintiffs note that there is no requirement to identify the policy makers, or affirmatively prove what they did not know.  See bold sections below from *Cash v. Cnty. of Erie*, allowing constructive notice and requiring personnel from the County to be proactive.

Definition of "deliberate indifference", O'Malley et al., Fed. Jury Prac & Instructions Civil (6th ed.) §165.41

1-8 Silver, Police Civil Liability §8.07[8] (Matthew Bender revised edition)—Supervisory Liability and Municipal Liability

1-8 Silver, Police Civil Liability §8.08[b][i] (Matthew Bender revised edition)—"Practice" as Policy

1-8 Silver, Police Civil Liability §8.08[b][iv] (Matthew Bender revised edition)—Informal Policy or Custom

1-8 Silver, Police Civil Liability §8.08[d] (Matthew Bender revised edition)—"Systemic Deficiencies" (Among the great difficulties of applying a "policy or custom" analysis is the question whether a municipality may be held liable for deprivation of constitutional rights caused by a concatenation of policies and practices, perhaps by different agencies.  In this situation, it is uncertain whether any particular policy violated a right and, indeed, just which municipal agency or official "caused" the deprivation.  Although liability may be conceptually difficult to justify, courts have held that an employer may be sued in these situations. (internal citations omitted))

*S.M. v. Krigbaum,* No. 14-3704 at 8 (8th Cir. Dec. 9, 2015) ("The Drug Court's multi-agency membership resulted in significant confusion and ignorance regarding who was supervising

Edwards on a day-to-day basis when he served as tracker.")

*City of Canton v. Harris,* 489 U.S. 3787, 388 (1989).

*Ware v. Jackson County, Mo.,* 150 F.2d 873, 882-884 (8th Cir. 1989).

*See also Cash v. Cnty. of Erie,* 654 F.3d 324, 334 (2d Cir. 2011):

> A municipal policy may be pronounced or tacit and reflected in either action or inaction. In the latter respect, a "city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Connick v. Thompson,* 131 S. Ct. 1350, 1360 (2011) (internal quotation marks omitted); *see also City of Canton v. Harris,* 489 U.S. 378, 396 (1989) (O'Connor, J., concurring in part and dissenting in part) ("**Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied**"). Consistent with this principle, "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 126 (2d Cir.2004) (Sotomayor, J.) (internal quotation marks omitted).
>
> Deliberate indifference may be inferred where "the need for more or better supervision to protect against constitutional violations was obvious," *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995), but the policymaker "fail[ed] to make meaningful efforts to address the risk of harm to plaintiffs," *Reynolds v. Giuliani,* 506 F.3d 183, 192 (2d Cir.2007); *see also Board of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 407 (1997) (holding that deliberate indifference requires proof that "municipal actor disregarded a known or obvious consequence of his action" (internal quotation marks omitted)); *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir.1992) (framing deliberate indifference inquiry in three parts: (1) policymaker knows "to a moral certainty" that its employees will confront a given situation; (2) either situation presents employees with difficult choice that will be made less so by training or supervision, or there is a record of employees mishandling situation; and (3) wrong choice by employees will frequently cause deprivation of constitutional rights (internal quotation marks omitted)).
>
> The existence of an affirmative duty to protect does not mean that any harm that befalls a person in state custody necessarily manifests a municipal policy of deliberate indifference to prisoner safety. **But an affirmative duty, by its nature, implies a proactive responsibility to assess the risks of harm presented by given circumstances and to take reasonable preventive measures in advance of harm occurring, not simply to respond to harms only after they occur.** *Cf. Farmer v. Brennan,* 511 U.S. 825, 845 (1994) (observing that deliberate indifference showing in parallel Eighth Amendment context "does not require a prisoner seeking a remedy for unsafe conditions to await a tragic event such as an actual assault before obtaining relief" (internal quotation marks and brackets omitted)).

*See also*:  O'Malley et al., FJI Civil Companion Handbook (2015-2016) §9:4

*Refuse*
*Patricia*

INSTRUCTION NO. _____C_____ Plaintiff's Alternative A

Plaintiff Keirsten Sooter claims to have been injured as a result of Defendant Lincoln County's failure to properly supervise Scott Edwards as Drug Court Tracker and that this alleged failure may be considered the official policy of Defendant Lincoln County.

Your verdict will be for Plaintiff Keirsten Sooter and against Defendant Lincoln County only if you find that:

*First*, the Lincoln County Sheriff, as policy maker for Defendant Lincoln County, was responsible for supervising Scott Edwards as Drug Court Tracker; and

*Second*, Defendant Lincoln County's supervision of Scott Edwards as Drug Court Tracker was inadequate; and

*Third*, the need for more supervision or different supervision was so obvious, and the inadequacy of the supervision so likely to create a risk of violations of constitutional rights, that one or more policymakers of defendant Lincoln County can reasonably be said to have been deliberately indifferent to the need for such supervision, and

*Fourth*, the failure of defendant Lincoln County to provide proper supervision was a cause of damage to that plaintiff.

If any of the above elements have not been proved by the greater weight of the evidence, then your verdict must be for Defendant Lincoln County, Missouri.

The definition of "deliberate indifference" to the rights of others is the conscious or reckless disregard of the consequences of one's acts or omissions. Deliberate indifference requires more than negligence or ordinary lack of due care.

Tendered by Plaintiff

Based on Eighth Circuit Model Jury Instructions 4.10 and O'Malley et al., Fed. Jury Prac & Instructions Civil (6th ed.) §165.27—Failure to Train.

In element second Plaintiffs have substituted for the O'Malley language "so likely to result in the

violation of constitutional rights", the language "so likely to create a risk of the violations of constitutional rights". Plaintiffs make this substitution because of the language in *Walton v. Dawson*, 752 F.3d 1109, 1118 (8th Cir. 2014). A municipality [may be] liable for a risk it *should have* known even if all of its employees in supervisory roles *did not* know of the risk and are thus not liable. *Compare Canton*, 489 U.S. at 390 & n. 10, 109 S.Ct. 1197 (explaining a municipality may be liable because the risk was "obvious" or "must have been plainly obvious"), *and id.* at 396, 109 S.Ct. 1197 (O'Connor, J., concurring and dissenting) (emphasizing that "actual or constructive notice" is enough).

In element fourth Plaintiffs have substituted "the cause" for the O'Malley language "a cause" based on O'Malley et al., Fed. Jury Prac & Instructions Civil (6th ed.) §165.27—Failure to Train.

As to the elements, see the oft cited case: *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992):

> To establish liability under *City of Canton*, "the plaintiff must prove ... that the training program at issue is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir.1989) (citing *City of Canton*).

Plaintiffs note that there is no requirement to identify the policy makers, or affirmatively prove what they did not know. See bold sections below from *Cash v. Cnty. of Erie*, allowing constructive notice and requiring personnel from the County to be proactive.

Definition of "deliberate indifference", O'Malley et al., Fed. Jury Prac & Instructions Civil (6th ed.) §165.41

1-8 Silver, Police Civil Liability §8.07[8] (Matthew Bender revised edition)—Supervisory Liability and Municipal Liability

1-8 Silver, Police Civil Liability §8.08[b][i] (Matthew Bender revised edition)—"Practice" as Policy

1-8 Silver, Police Civil Liability §8.08[b][iv] (Matthew Bender revised edition)—Informal Policy or Custom

1-8 Silver, Police Civil Liability §8.08[d] (Matthew Bender revised edition)—"Systemic Deficiencies" (Among the great difficulties of applying a "policy or custom" analysis is the question whether a municipality may be held liable for deprivation of constitutional rights caused by a concatenation of policies and practices, perhaps by different agencies. In this situation, it is uncertain whether any particular policy violated a right and, indeed, just which municipal agency or official "caused" the deprivation. Although liability may be conceptually difficult to justify, courts have held that an employer may be sued in these situations. (internal citations omitted))

*S.M. v. Krigbaum*, No. 14-3704 at 8 (8th Cir. Dec. 9, 2015) ("The Drug Court's multi-agency membership resulted in significant confusion and ignorance regarding who was supervising

Edwards on a day-to-day basis when he served as tracker.")

*City of Canton v. Harris,* 489 U.S. 3787, 388 (1989).

*Ware v. Jackson County, Mo.,* 150 F.2d 873, 882-884 (8th Cir. 1989).

*See also Cash v. Cnty. of Erie,* 654 F.3d 324, 334 (2d Cir. 2011):

> A municipal policy may be pronounced or tacit and reflected in either action or inaction. In the latter respect, a "city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Connick v. Thompson,* 131 S. Ct. 1350, 1360 (2011) (internal quotation marks omitted); *see also City of Canton v. Harris,* 489 U.S. 378, 396 (1989) (O'Connor, J., concurring in part and dissenting in part) ("**Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied**"). Consistent with this principle, "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 126 (2d Cir.2004) (Sotomayor, J.) (internal quotation marks omitted).
>
> Deliberate indifference may be inferred where "the need for more or better supervision to protect against constitutional violations was obvious," *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995), but the policymaker "fail[ed] to make meaningful efforts to address the risk of harm to plaintiffs," *Reynolds v. Giuliani,* 506 F.3d 183, 192 (2d Cir.2007); *see also Board of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 407 (1997) (holding that deliberate indifference requires proof that "municipal actor disregarded a known or obvious consequence of his action" (internal quotation marks omitted)); *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir.1992) (framing deliberate indifference inquiry in three parts: (1) policymaker knows "to a moral certainty" that its employees will confront a given situation; (2) either situation presents employees with difficult choice that will be made less so by training or supervision, or there is a record of employees mishandling situation; and (3) wrong choice by employees will frequently cause deprivation of constitutional rights (internal quotation marks omitted)).
>
> The existence of an affirmative duty to protect does not mean that any harm that befalls a person in state custody necessarily manifests a municipal policy of deliberate indifference to prisoner safety. **But an affirmative duty, by its nature, implies a proactive responsibility to assess the risks of harm presented by given circumstances and to take reasonable preventive measures in advance of harm occurring, not simply to respond to harms only after they occur.** *Cf. Farmer v. Brennan,* 511 U.S. 825, 845 (1994) (observing that deliberate indifference showing in parallel Eighth Amendment context "does not require a prisoner seeking a remedy for unsafe conditions to await a tragic event such as an actual assault before obtaining relief" (internal quotation marks and brackets omitted)).

*See also*: O'Malley et al., FJI Civil Companion Handbook (2015-2016) §9:4

*Refused Patricia L. Cohen*

INSTRUCTION NO. ___D___ Plaintiff's Alternative A

Plaintiff Lisa Mangold claims to have been injured as a result of Defendant Lincoln County's failure to properly supervise Scott Edwards as Drug Court Tracker and that this alleged failure may be considered the official policy of Defendant Lincoln County.

Your verdict will be for Plaintiff Lisa Mangold and against Defendant Lincoln County only if you find that:

*First*, the Lincoln County Sheriff, as policy maker for Defendant Lincoln County, was responsible for supervising Scott Edwards as Drug Court Tracker; and

*Second*, Defendant Lincoln County's supervision of Scott Edwards as Drug Court Tracker was inadequate; and

*Third*, the need for more supervision or different supervision was so obvious, and the inadequacy of the supervision so likely to create a risk of violations of constitutional rights, that one or more policymakers of defendant Lincoln County can reasonably be said to have been deliberately indifferent to the need for such supervision, and

*Fourth*, the failure of defendant Lincoln County to provide proper supervision was a cause of damage to that plaintiff.

If any of the above elements have not been proved by the greater weight of the evidence, then your verdict must be for Defendant Lincoln County, Missouri.

The definition of "deliberate indifference" to the rights of others is the conscious or reckless disregard of the consequences of one's acts or omissions. Deliberate indifference requires more than negligence or ordinary lack of due care.

Tendered by Plaintiff

Based on Eighth Circuit Model Jury Instructions 4.10 and O'Malley et al., Fed. Jury Prac & Instructions Civil (6th ed.) §165.27—Failure to Train.

In element second Plaintiffs have substituted for the O'Malley language "so likely to result in the

violation of constitutional rights", the language "so likely to create a risk of the violations of constitutional rights". Plaintiffs make this substitution because of the language in *Walton v. Dawson*, 752 F.3d 1109, 1118 (8th Cir. 2014). A municipality [may be] liable for a risk it *should have* known even if all of its employees in supervisory roles *did not* know of the risk and are thus not liable. *Compare Canton,* 489 U.S. at 390 & n. 10, 109 S.Ct. 1197 (explaining a municipality may be liable because the risk was "obvious" or "must have been plainly obvious"), *and id.* at 396, 109 S.Ct. 1197 (O'Connor, J., concurring and dissenting) (emphasizing that "actual or constructive notice" is enough).

In element fourth Plaintiffs have substituted "the cause" for the O'Malley language "a cause" based on O'Malley et al., Fed. Jury Prac & Instructions Civil (6th ed.) §165.27—Failure to Train.

As to the elements, see the oft cited case: *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992):

> To establish liability under *City of Canton,* "the plaintiff must prove ... that the training program at issue is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Hill v. McIntyre,* 884 F.2d 271, 275 (6th Cir.1989) (citing *City of Canton*).

Plaintiffs note that there is no requirement to identify the policy makers, or affirmatively prove what they did not know. See bold sections below from *Cash v. Cnty. of Erie*, allowing constructive notice and requiring personnel from the County to be proactive.

Definition of "deliberate indifference", O'Malley et al., Fed. Jury Prac & Instructions Civil (6th ed.) §165.41

1-8 Silver, Police Civil Liability §8.07[8] (Matthew Bender revised edition)—Supervisory Liability and Municipal Liability

1-8 Silver, Police Civil Liability §8.08[b][i] (Matthew Bender revised edition)—"Practice" as Policy-

1-8 Silver, Police Civil Liability §8.08[b][iv] (Matthew Bender revised edition)—Informal Policy or Custom

1-8 Silver, Police Civil Liability §8.08[d] (Matthew Bender revised edition)—"Systemic Deficiencies" (Among the great difficulties of applying a "policy or custom" analysis is the question whether a municipality may be held liable for deprivation of constitutional rights caused by a concatenation of policies and practices, perhaps by different agencies. In this situation, it is uncertain whether any particular policy violated a right and, indeed, just which municipal agency or official "caused" the deprivation. Although liability may be conceptually difficult to justify, courts have held that an employer may be sued in these situations. (internal citations omitted))

*S.M. v. Krigbaum,* No. 14-3704 at 8 (8th Cir. Dec. 9, 2015) ("The Drug Court's multi-agency membership resulted in significant confusion and ignorance regarding who was supervising

Edwards on a day-to-day basis when he served as tracker.")

*City of Canton v. Harris,* 489 U.S. 3787, 388 (1989).

*Ware v. Jackson County, Mo.,* 150 F.2d 873, 882-884 (8th Cir. 1989).

*See also Cash v. Cnty. of Erie,* 654 F.3d 324, 334 (2d Cir. 2011):

> A municipal policy may be pronounced or tacit and reflected in either action or inaction. In the latter respect, a "city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Connick v. Thompson,* 131 S. Ct. 1350, 1360 (2011) (internal quotation marks omitted); *see also City of Canton v. Harris,* 489 U.S. 378, 396 (1989) (O'Connor, J., concurring in part and dissenting in part) ("**Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied**"). Consistent with this principle, "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 126 (2d Cir.2004) (Sotomayor, J.) (internal quotation marks omitted).
>
> Deliberate indifference may be inferred where "the need for more or better supervision to protect against constitutional violations was obvious," *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995), but the policymaker "fail[ed] to make meaningful efforts to address the risk of harm to plaintiffs," *Reynolds v. Giuliani,* 506 F.3d 183, 192 (2d Cir.2007); *see also Board of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 407 (1997) (holding that deliberate indifference requires proof that "municipal actor disregarded a known or obvious consequence of his action" (internal quotation marks omitted)); *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir.1992) (framing deliberate indifference inquiry in three parts: (1) policymaker knows "to a moral certainty" that its employees will confront a given situation; (2) either situation presents employees with difficult choice that will be made less so by training or supervision, or there is a record of employees mishandling situation; and (3) wrong choice by employees will frequently cause deprivation of constitutional rights (internal quotation marks omitted)).
>
> The existence of an affirmative duty to protect does not mean that any harm that befalls a person in state custody necessarily manifests a municipal policy of deliberate indifference to prisoner safety. **But an affirmative duty, by its nature, implies a proactive responsibility to assess the risks of harm presented by given circumstances and to take reasonable preventive measures in advance of harm occurring, not simply to respond to harms only after they occur.** *Cf. Farmer v. Brennan,* 511 U.S. 825, 845 (1994) (observing that deliberate indifference showing in parallel Eighth Amendment context "does not require a prisoner seeking a remedy for unsafe conditions to await a tragic event such as an actual assault before obtaining relief" (internal quotation marks and brackets omitted)).

*See also*:  O'Malley et al., FJI Civil Companion Handbook (2015-2016) §9:4